## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MISTI WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-04-732-F |
| | ) | |
| HAMMER CONSTRUCTION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## O R D E R

Before the court is Defendant's Motion for Summary Judgment, filed May 2, 2005 (docket entry no. 18). Plaintiff, with the court's permission, responded to the motion on June 2, 2005. Upon due consideration of the parties' submissions, the court makes its determination.

Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or

denials, demonstrating that there is a genuine issue for trial.  <u>Posey v. Skyline Corp.</u>, 702 F.2d 102, 105 (7th Cir. 1983).

<u>Background</u>

Viewing the evidence in a light most favorable to plaintiff, Misti White ("White"), the relevant facts are as follows.  White is a former employee of defendant, Hammer Construction, Inc. ("HCI").  White was employed by HCI from January 13, 2003 until April 24, 2003, in the non-salaried position of receptionist-accounts payable clerk.  On all dates relevant to this action, Judy Simmons, HCI's office manager, was White's direct supervisor.  Shirley Hammer ("Hammer") was HCI's owner and president.

At the time of her interview for the position of receptionist-accounts payable clerk, White advised Hammer and Simmons that she was pregnant.  Hammer informed White that she would work with White if she needed time off or if she needed a day off due to the pregnancy.

On April 22, 2003, White told Hammer that she was not feeling well. According to White, she had been really dizzy and disoriented.  She asked permission to be absent from work to go to the doctor, which was granted.  White went to her doctor the next day on April 23, 2003 to check her health concerns.

On April 23, 2003, after receiving word that White would not be in the office after her doctor's appointment but would be returning to the office the next day, Hammer and Simmons discussed plans to cover White's position.  They discussed moving another employee, Becki Wells, into White's position to train, assist or fill the position.  They also discussed Simmons filling the position until a new employee, previously hired but not due to arrive until May 22, 2003, could train, assist or fill the position.  In that conversation, Hammer suggested to Simmons that a request be made

of White's doctor to provide documentation verifying White's ability to continue clerical responsibilities.

Prior to April 24, 2003, White had missed eight full days and four partial days for pregnancy-related medical problems.  White's pregnancy-related absences, however,  were never brought up as an issue by HCI.  White was not reprimanded for any reason during her employment.

On April 24, 2003, White reported to work before her scheduled start time. Approximately 15 minutes later,  Simmons arrived and informed White that Hammer wanted to speak with her when she arrived at work.  Later, Hammer informed Simmons that she would not be into the office due to the death of her father. Simmons then called White into her office.  Simmons told White that "due to [her] pregnancy, [her] doctor's appointments and not being able to be there as much as the other girls that [she] couldn't perform [her] job duty and that they would have to let [her] go."  *See*, Exhibit 1 to plaintiff's response, White's Deposition, p. 29, ll. 22-25. White thereafter showed Simmons a doctor's note she received.  Although the doctor's note limited White's work to six hours a week, White advised Simmons that the doctor actually limited her work to six hours a day.  Simmons then told White, "it was not fair to the other girls for them to have to work eight or more hours a day and [White] only to have to work six . . ."  *Id*. at p. 30, ll. 22-24.

White testified in deposition that "[Simmons] has always -- she always made decisions.  She was -- she was the boss when [Hammer] was not there."  *Id*. at p. 33, ll. 18-20.

White gathered her personal belongings and left the building.  White sent her husband to pick up her paychecks and but Simmons would not give him the paychecks because White still had an office key.  White went to the office on April 25, 2003 to return the key and pick up the paychecks.  Simmons asked White why she was angry.

She told her she did not want to discuss it; she just wanted her paychecks.  Simmons told White she did not fire her.  As White went out the door, she said "it's okay, you did me a favor."  *See*, Exhibit 1 to defendant's motion, White's Deposition, p. 45 ll. 15-16.

White brings the instant action alleging that she was terminated was based upon her pregnancy in violation of the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k).

Discussion

Claims brought under the PDA are analyzed in the same way as claims of disparate treatment under Title VII of the Civil Rights Act of 1964.  A plaintiff may rely on direct or indirect evidence to establish her discrimination claim.  If plaintiff relies upon indirect or circumstantial evidence of discrimination, the court evaluates a summary judgment motion under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U .S. 792, 802-05 (1973).  EEOC v. Horizon/CMS Healthcare Corporation, 220 F.3d 1184,  1191(10th Cir. 2000).

The McDonnell Douglas framework comprises three burden shifting steps. Initially, the burden rests with the plaintiff to establish a prima facie case of pregnancy discrimination.  *Id*.  By establishing a prima facie case, the plaintiff raises a rebuttable presumption that the defendant unlawfully discriminated against her.  *Id*.  The burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its employment action.  *Id*.  The defendant's burden at this stage is one of production, not one of persuasion.  *Id*.  Finally, if the defendant articulates a nondiscriminatory reason, then the burden shifts to the plaintiff to show that the defendant's proffered reason is merely a pretext for pregnancy discrimination.  *Id*.

To establish a prima facie case of pregnancy discrimination, the plaintiff must show:  (1) she is within the protected class; (2) she was doing satisfactory work; (3)

she was discharged; and (4) her position remained open and was ultimately filled by a nonpregnant employee.  Atchley v. Nordam Group, Inc., 180 F.3d 1143, 1148 (10th Cir. 1999).

In its motion, HCI contends that White is unable to establish a prima facie case because she cannot show that she was terminated or suffered any other adverse effect on her employment.  HCI contends that only Hammer had the authority to fire employees and Hammer never terminated White.  Exhibit 1 and Exhibit 3 to defendant's motion, White's Deposition, p. 50, ll. 2-3, Hammer's Deposition, p. 57, ll. 5-15,   In addition, HCI asserts that White has no evidence of any discriminatory conduct on the part of Hammer.  Not only did Hammer hire White, knowing that she was pregnant, but she also excused absences for eight full days of work without criticizing White or reprimanding her.  As to Simmons, HCI contends that Simmons knew she could not fire employees.  HCI also asserts that Simmons testified that she had never talked to Hammer about any plans to fire White and that she had no plan to fire White.  Exhibit 2 to defendant's motion, Simmons' Deposition, p. 56, ll. 17-19.  Furthermore, HCI asserts that when White returned the next day to pick up her paychecks, Simmons told her she had not fired White.  HCI contends that despite all the signs that she had not been fired, White failed to avail herself of any recourse by going to Hammer to discuss the alleged termination.  Exhibit 1 to defendant's motion, White's Deposition, p. 50, ll. 9-14.  Because White cannot meet her threshold burden of showing that she was terminated or suffered any adverse effect on her employment, HCI contends that it is entitled to summary judgment on the PDA claim.

White contends that Simmons had apparent authority to terminate her.  Indeed, White asserts that Simmons specifically told White that "we will have to let you go." Exhibit 1 to defendant's motion, White's Deposition, p. 32, ll. 3-4.  White contends that Simmons was her direct supervisor and never communicated to White that she did

not have authority to terminate her.  White also contends that Hammer conceded in deposition that it is possible that Simmons' statement to White could have left a clear impression that White was being fired.  *See*, Exhibit 3 to plaintiff's response, Hammer's Deposition, p. 56, ll. 6-9.  White therefore contends that the question of whether Simmons terminated her on April 24, 2003 is a question for the jury.

Viewing the evidence in a light most favorable to White, the court concludes that White has raised a genuine issue of fact as to whether she was discharged.  The jury, not the court, must decide whose version of the April 24, 2003 conversation, White's or Simmons' version, is to be believed.  Although Simmons may not have had express authority to fire employees, there is a question of fact as to whether Simmons acted with apparent authority in terminating White.  Simmons was White's direct supervisor.  She was involved in the interview process and had input into the decision to hire White.  According to White's version of the April 24, 2003 conversation, Simmons professed an authority to terminate White by stating that "we will have to let you go."  Moreover, White testified that "[Simmons] has always -- she always made decisions.  She was -- she was the boss when [Hammer] was not there."  *Id*. at p. 33, ll. 18-20.  The court concludes that White has presented sufficient evidence to raise a genuine issue of fact as to the third element of her prima facie case, that she was discharged from her employment.

HCI also contends that it is entitled to summary judgment because White cannot show any preferential treatment to any similarly-situated employee.  According to HCI, the only comparable employees to White were Tracy Condit, an hourly-wage accounts receivable clerk, and Becki Wells, an hourly-wage receptionist.  Although White in her deposition claimed that Tracy Condit received preferential treatment, HCI contends that White cannot show any evidence of preferential treatment.  HCI contends that White has no actual knowledge regarding Tracy Condit's absences.

-6-

In order to satisfy her prima facie case, White is not required to establish that she was treated less favorably than her non-pregnant counterparts. As noted by the Tenth Circuit in EEOC v. Horizon/CMS Healthcare Corp., *supra*., "[n]othing in the case law in this circuit *requires* a plaintiff to compare herself to similarly-situated co-workers to satisfy the fourth element of her prima facie case. A plaintiff alleging discrimination in violation can satisfy the fourth element of her prima facie case in a number of ways." 220 F.3d at p. 1195, n. 6 (emphasis in original). In Atchley v. Nordam Group, Inc., *supra*., the Tenth Circuit articulated the fourth element to be that plaintiff's "position remained open and was ultimately filled by a nonpregnant employee." 180 F.3d at 1148. Taking the evidence in a light most favorable to White, there is sufficient evidence to raise a genuine issue of fact as to the fourth element of the prima facie case, that the position remained open and was ultimately filled by a non-pregnant employee.

Although evidence that a defendant treated a plaintiff differently than similarly-situated employees is not required to establish a prima facie case, the Tenth Circuit has  also noted that such evidence is "certainly *sufficient* to establish a prima facie case." Horizon, 220 F.3d at 1195, n. 6 (emphasis in original). Taking the evidence in a light most favorable to White, the court concludes that White has presented sufficient evidence to raise a genuine issue of fact as to whether Tracy Condit, a comparable non-pregnant employee who was granted a leave of absence for surgery and allowed to return on a part time basis, was treated more favorably than White. The court therefore concludes that summary judgment is not appropriate on the ground that White cannot show that similarly-situated employees were given preferential treatment.

HCI also contends that it is entitled to summary judgment because White was not qualified for any other modified duty position and cannot demonstrate that a

modified duty position was available.  In so arguing, HCI relies upon the Horizon case wherein plaintiffs alleged discrimination on the basis of defendant's refusal to place them in modified-duty assignments.  220 F.3d at 1192.  In Horizon, the Tenth Circuit stated that in order to establish a prima facie case, plaintiffs must show that: "(1) they are members of a protected group; (2) they were qualified for the modified-duty positions sought; (3) they were denied the modified-duty assignments; and (4) they were denied the modified-duty assignments "'under circumstances which give rise to an inference of unlawful discrimination.'" 220 F.3d at 1192 (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)).  Initially, the court agrees with White that she need not establish the modified-duty assignments prima facie case in order to survive  summary judgment on her discharge claim.  But to the extent that she is claiming discrimination based upon the refusal to place her in a modified-duty assignment, the court concludes that White has presented sufficient evidence to raise a genuine issue of fact as to the second, third and fourth elements of the prima facie case.

As White has established a prima facie case under the McDonnell Douglas framework, the burden shifts to HCI to articulate a non-discriminatory reason for its decision to terminate White's employment.  HCI must simply "articulate through some proof a facially nondiscriminatory reason for the termination" without "litigat[ing] the merits of the reasoning" or proving "that the reason relied upon was bona fide" or that "the reasoning was applied in a nondiscriminatory fashion." Ingels v. Thiokol Corp., 42 F.3d 616, 621 (10th Cir. 1994).  In the court's view, HCI has not articulated a non-discriminatory reason for its decision to terminate White's employment.  The primary thrust of HCI's motion is that it did not terminate White and White cannot show preferential treatment of similarly-situated employees.  Because the court concludes that White has presented sufficient evidence to raise a

genuine issue of fact as to whether she was terminated and whether Tracy Condit received preferential treatment, the court concludes that summary judgment is not appropriate. By presenting sufficient evidence to establish her prima facie case, White has establish a rebuttable presumption of discrimination. And because HCI has not rebutted that presumption in its summary judgment motion, the court concludes that White's termination claim must proceed to trial.

To the extent White is asserting a modified-duty assignment claim and HCI is articulating as its non-discriminatory reason for its employment decision that White could not work thirty hours a week and complete her work in a timely fashion, the court concludes that White has presented sufficient evidence to raise a genuine issue of fact as to whether the non-discriminatory reason is a pretext for discrimination. The court therefore also concludes that summary judgment is not appropriate on the modified-duty assignment claim.

The court notes that in her response to HCI's summary judgment motion, White points out that defendant addressed only the indirect or circumstantial method of establishing a triable issue of discrimination (the McDonnell Douglas framework) and ignored the direct evidence of discrimination which was present in the case. White asserts that she need not establish pregnancy discrimination using the McDonnell Douglas framework because she can establish pregnancy discrimination through direct evidence. White specifically relies upon the statement by Simmons "due to [White's] pregnancy, [her] doctor's appointments and not being able to be there as much as the other girls that [White] couldn't perform [her] job duty and that they would have to let [her] go," *see*, Exhibit 1 to plaintiff's response, White's Deposition, p. 29, ll. 22-25, as direct evidence of pregnancy discrimination.

Because HCI did not file a reply to White's response, HCI has not addressed whether the evidence relied upon by White would constitute direct evidence of

pregnancy discrimination.  However, upon review of the evidence in a light most favorable to White,  the court agrees with White that such evidence would constitute direct evidence of pregnancy discrimination.

It is well-established that a plaintiff alleging discrimination may prove that she was discriminated against "through either direct evidence of discrimination (e.g., oral or written statements on the part of a defendant showing a discriminatory motivation) or indirect (i.e., circumstantial) evidence of discrimination." Kendrick v. Penske Transp. Servs. Inc., 220 F.3d 1220, 1225 (10th Cir.2000) (citing Shorter v. ICG Holdings, Inc., 188 F.3d 1204, 1207 (10th Cir.1999); Elmore v. Capstan, Inc., 58 F.3d 525, 529 (10th Cir.1995)).  Direct evidence is "[e]vidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption." Shorter, 188 F.3d at 1207 (internal quotations and citations omitted).  Statements of personal opinion, even when reflecting a personal bias or prejudice, do not constitute direct evidence of discrimination. Shorter, 188 F.3d at 1207.  Instead, "plaintiff must show that the employer actually relied on her [pregnancy] in making its decision." Price Waterhouse v. Hopkins, 490 U.S. 228, 252 (1989).

As previously stated, White relies upon Simmons' statement "due to [White's] pregnancy, [her] doctor's appointments and not being able to be there as much as the other girls that [White] couldn't perform [her] job duty and that they would have to let [her] go," as direct evidence that defendant's decision to terminate White was motivated by White's pregnancy.  HCI, of course, vehemently disputes White's version of the conversation between White and Simmons on April 24, 2003.  However, viewing the evidence in the light most favorable to White as the court is required to do, the court finds that Simmons' statement as testified to by White is direct evidence that HCI relied upon White's pregnancy to terminate her.  White has presented direct evidence of discrimination because she has offered evidence that

Simmons actually relied on White's pregnancy in determining that plaintiff should be terminated.    Because White has presented direct evidence of pregnancy discrimination, the court concludes that summary judgment is not appropriate on White's discriminatory discharge claim.

Conclusion

Based upon the foregoing, Defendant's Motion for Summary Judgment, filed May 2, 2005 (docket entry no. 18), is **DENIED**.

Dated this 5th of July, 2005.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

04-0732p007(pub).wpd